IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEPTEMBER JONES<br>15616 Westview Drive<br>Cleveland, Ohio, 44128 | ) ) ) ) | CASE NO: |
| Plaintiff, | ) ) | JUDGE |
| vs. | ) ) | COMPLAINT FOR DAMAGES |
| HEALTH CARE BRIDGE, INC.<br>c/o Helen Friedman, Statutory Agent<br>24011 Greenlawn Ave.<br>Beachwood, Ohio, 44122 | ) ) ) ) ) ) ) | (Jury Demand Endorsed) |
| -and- | ) ) | |
| JANUARY CURRY<br>19111 Lanbury Ave,<br>Warrensville Heights, Ohio, 44122 | ) ) ) ) | |
| Defendants. | ) | |

Plaintiff September Jones, by and through undersigned counsel, as her Complaint against Defendants, state and avers the following:

## PARTIES

1. Jones is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. Health Care Bridge, Inc. ("HCB") is a domestic corporation which maintains its principal place of business in Cleveland, Ohio.

3. Curry is, and, at all times hereinafter mentioned, was a supervisor and/or manager for HCB who acted directly or indirectly in the interest of HCB.

4. At all times relevant herein, Curry supervised and/or controlled Jones' employment with HCB.

5. At all times relevant herein, Curry acted directly or indirectly in the interest of HCB in relation to its employees.

6. At all times referenced herein, Curry supervised and/or controlled employment of Jones and acted directly or indirectly in the interest of HCB in relation to HCB's employees, including controlling its day to day operations and respective compensation practices; therefore, Curry is an employer within the meaning of Ohio R.C. § 4112.01(A)(3); Article II, Section 34a of the Ohio Constitution; the Ohio Minimum Fair Wages Standards Act ("OMFWSA"); and the Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 203(d).

## PERSONAL JURISDICTION

7. Defendants hire citizens of the state of Ohio, contracts with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

8. Jones worked in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired and terminated in this district.

9. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Jones' state law claims because those claims derive from a common nucleus of operative facts.

12. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

## FLSA COVERAGE

13. At all times referenced herein, HCB formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said

2

enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

14. At all times material to the Complaint, Jones directly participated in the actual movement of things in interstate commerce by regularly using instrumentalities of interstate commerce in connection with her work.

15. At all times referenced herein, Defendants were employers within the meaning of the FLSA and the OMFWSA.

## FACTS

### (**Background Facts**)

16. HCB is a home health care provider.

17. Jones is a former employee of Defendants.

18. Jones was first hired by Defendants to work for HCB in or around July of 2018 as a Home Healthcare Worker.

19. In or around October of 2018, Jones was promoted to the position of "Aide Support and Scheduler."

20. Jones began working at HBC's Beachwood, Ohio office upon being promoted to Aide Support and Scheduler ("Beachwood Office").

21. Beginning in or around January of 2019, Jones would occasionally perform Health Care Aide work in addition to her scheduling duties.

### (**Facts Relating To Jones' Overtime Claims**).

22. At all times referenced herein, Jones was paid on an hourly basis.

23. Throughout Jones' employment with Defendants, she received non-discretionary bonuses and other payments.

24. At all times referenced herein, Jones was non-exempt from the overtime requirements of the FLSA and the OMFWSA.

25. At all times referenced herein, Jones was paid on a bi-weekly basis.

26. Throughout Jones' employment, Defendants failed to include bonuses and other, non-hourly compensation Jones received in the calculation of her overtime pay.

27. Throughout Jones' employment, Defendants regularly underpaid her overtime by miscalculating the proper overtime rate, even when Jones was not paid any extra compensation.

28. For example, Jones' paycheck for the pay period of June 23, 2019 through July 6, 2019 incorrectly calculated her overtime rate at $20.01 per hour, instead of $26.25, when her regular rate of pay was $17.50 per hour:



29. As another example, Jones' paycheck for the time period between February 17, 2019 and March 2, 2019, improperly calculated Jones' overtime rate at $21.52 instead of $26.25, when her regular rate of pay was $17.50 per hour:

4

| HEALTH CARE BRIDGE INC | | | 3733 PARK EAST DRIVE | | | BEACHWOOD OH 44122 | | | | | Pay Date: 03/15/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EE # 729 | September Jones | | | | DEPT # 100 | | | Check: 29783885 | | Period: | 02/17/2019 to 03/02/2019 |
| EARNING | RATE | HOUR/UNIT | CURRENT $ | YTD HR/UNIT | YTD $ | DEDUCTION | CURRENT $ | YTD $ | TAX | CURRENT $ | OTHER INFORMATION |
| Reg | 17.5000 | 80.0000 | 1,400.00 | | | | | | SOC | 156.11 | |
| OT | 21.5250 | 38.0000 | 817.95 | | | | | | MED | 36.51 | |
| Bonus | | | 100.00 | | | | | | FITWH | 11.03 | |
| Mile | 0.4000 | 198.0000 | 79.20 | | | | | | OH | 74.12 | |
| OnCall | | | 200.00 | | | | | | OHBEA | 50.36 | |
| TOTALS | | 316.0000 | 2,597.15 | | | | | | | 328.13 | NET 2,269.02 |

30. At all times referenced herein, Jones was required to perform "on-call" work during weekends.

31. Defendants paid Jones $200.00 biweekly to perform on-call work.

32. Defendants regularly failed to include Jones' "on-call" pay in their calculation of the overtime rate to be paid to Jones.

33. For example, Jones' paycheck for the week of September 1, 2019 through September 14, 2019 calculated Jones' overtime rate based only on her hourly rate of $13.82 but unlawfully failed to include a "cell phone bonus" or pay Jones' "on-call" pay training in the overtime rate calculation:

| BI-WEEKLY | RATE | HR/UNIT | CURRENT $ | YTD HR/UNIT | YTD $ | DEDUCTION | CURRENT $ | YTD $ | TAX | CURRENT $ | YTD $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hourly | 13.82 | 80.00 | 1,105.60 | 1,600.00 | 25,728.00 | | | | FITWH | 14.29 | 261.60 |
| OT | 20.73 | 48.00 | 995.04 | 828.00 | 17,572.89 | | | | MED | 36.96 | 710.18 |
| Mile | 0.25 | 269.50 | 67.38 | 1,890.90 | 579.93 | | | | SOC | 158.14 | 3,036.52 |
| CPR Instru | | | 250.00 | | 250.00 | | | | OH | 75.35 | 1,398.02 |
| OnCall | | | 200.00 | | 3,800.00 | | | | OHBEA | 51.01 | 979.54 |
| Bonus | | | | | 1,325.00 | | | | | | |
| Cell Phone | | | | | 300.00 | | | | | | |

34. In or around November of 2019, HCB was sued by a former Home Health Aid in the Northern District Court of Ohio for violations of the FLSA. That case is stylized as *Deeandra Terrell v. Health Care Bridge, Inc.*, No. 1:19cv02762. ("Terrell Litigation").

35. The nature of the FLSA claims asserted in the Terrell Litigation differ from the nature of the claims being asserted by Jones in this matter.

5

36. In or around April of 2020, Jones was sent a draft copy of HCB's responses to written discovery in the Terrell Litigation for the purpose of providing documents to HCB's legal counsel, Brian G. Dershaw of Taft Stettinius & Hollister LLP ("Taft").
37. Subsequently, Jones searched for documents that were requested by the written discovery, including Terrell's personnel file.
38. HCP could not locate several documents relating to Terrell.
39. Subsequently, Curry told Plaintiff that she would simply "create" documents and "back date" them.
40. Upon information and belief, Curry fabricated an attendance write up, and possibly other documents, for the purpose of producing in the Terrell Litigation.
41. Upon information and belief, Taft was not aware of and did not participate in the fabrication of any documents produced in the Terrell Litigation.
42. Any and all documents that were fabricated for the Terrell Litigation were fabricated by Curry alone without the knowledge or participation of HCB or Taft.
43. Being asked to provide information for the Terrell Litigation caused Jones to question whether she was being paid properly.
44. Subsequently, Jones reviewed her pay stubs and noticed that she was not being paid time and on half correctly.
45. Jones also observed that the number of dependents she was purportedly claiming had been increased significantly without her knowledge.
46. Jones came to believe that her number of dependents was being altered to conceal the fact that she was being underpaid overtime.
47. Subsequently, Jones complained to Curry and HCB's payroll processor, Stephanie Oberman, about the errors she had seen in her paychecks.

48. Curry responded to Jones' complaints by telling Jones that she was incorrect and that she was being paid correctly.

49. Notwithstanding the clear errors in her pay, Defendants refused to fix Jones' pay in response to her complaints.

50. Upon information and belief, HCB has previously been found to have violated the FLSA by the Department of Labor.

51. HCB's violations of the FLSA were intentional, willful and reckless.

52. HCB lacked a good faith basis for failing to pay Jones the proper overtime rate.

(**Facts Related To Jones' Retaliatory Termination**).

53. Jones is African American.

54. At all times referenced herein, Jones was the only African American working at HCB's Beachwood Office.

55. Jones was regularly subjected to mistreatment by her co-workers when she worked at the Beachwood office.

56. Jones reasonably believed that she was being assigned more work relative to other Caucasian employees.

57. Jones' Caucasian coworkers were hostile and unfriendly towards her.

58. Curry regularly blamed Jones for mistakes that were caused or created by the acts and/or omissions of Jones' Caucasian coworkers, rather than by Jones.

59. In or around early 2019, one of Jones' Caucasian co-workers, Milana Zinevitch, physically assaulted Jones on HCB's property.

60. Zinevitch was the aggressor in the dispute between her and Jones.

61. Zinevitch attacked Jones because she was unhappy with how Jones was training another employee.

62. Immediately following Zinevitch's attack, Curry discussed the incident with Jones.

63. Jones complained to Curry that she felt that Zinevitch had attacked her because of her race ("First Race Discrimination Complaint").

64. Upon information and belief, HCB maintains policies against discrimination and harassment ("Discrimination Policy").

65. Physically attacking a co-worker because of their race violates HCB's discrimination policy.

66. Alternatively, physically attacking a co-worker because of their race is tolerated and permitted by HCB.

67. Upon information and belief, HCB has a policy to investigate reports of unlawful discrimination and harassment ("Investigation Policy").

68. Pursuant to HCB's Investigation Policy, an investigation of discrimination or harassment should include interviewing the complainant.

69. Pursuant to HCB's Investigation Policy, an investigation of discrimination or harassment should include interviewing the subject of the complaint.

70. Pursuant to HCB's Investigation Policy, an investigation of discrimination or harassment should include interviewing any witnesses to the complained of discrimination/harassment.

71. Pursuant to HCB's Investigation Policy, an investigation of discrimination or harassment should include getting a written statement from the complainant.

72. Pursuant to HCB's Investigation Policy, an investigation of discrimination or harassment should include getting a written statement from the subject of the complaint.

73. Pursuant to HCB's Investigation Policy, an investigation of discrimination or harassment should include getting a written statement from any witnesses to the reported discrimination and/or harassment.

74. Curry responded to Jones by questioning her belief that Zinevitch had been motivated by Jones' race when Zinevitch attacked Jones.

75. Curry failed to interview Jones regarding her First Race Discrimination Complaint.

76. Curry failed to interview Zinevitch regarding Jones' First Race Discrimination Complaint.

77. Curry failed to interview any witnesses regarding Jones' First Race Discrimination Complaint.

78. Jones did not obtain a written statement from Jones concerning her First Race Discrimination Complaint.

79. Jones did not obtain a written statement from Zinevitch concerning Jones' First Race Discrimination Complaint.

80. Jones did not obtain a written statement from any witnesses concerning Jones' First Race Discrimination Complaint.

81. Both Jones and Zinevitch were disciplined as a result of Zinevitch's attack, but Zinevitch was not disciplined in any way for attacking Jones based on Jones' race.

82. Jones was not suspended for attacking Jones based on Jones' race.

83. Jones was not terminated for attacking Jones based on Jones' race.

84. Defendants took no action whatsoever in response to Jones' First Race Discrimination Complaint.

85. Several of Jones' Caucasian coworkers are of Russian descent and speak Russian.

86. Several of Jones' Caucasian co-workers regularly spoke Russian in front of Jones.

87. Several of Jones' Caucasian co-workers regularly referred to her as a "suka," which is Russian for "bitch."

88. Jones' Caucasian co-workers did not call each other "suka" or bitch.

89. Jones' Caucasian co-workers regularly referred to her as "stupid."

90. Jones' Caucasian co-workers did not call each other "stupid."

91. Several of Jones' Caucasian co-workers appeared to speak about her in Russian, as evidenced by their body language, and they would then laugh, leading Jones to believe that were making jokes at her expense.

92. Jones came to believe that her Caucasian, Russian-speaking co-workers were making jokes amongst themselves about her race.

93. Jones reasonably believed that her Caucasian co-workers called her "suka" and "stupid" and other names in Russian because of her race.

94. In or around late April or early May of 2020, Jones complained to Curry about the mistreatment she was experiencing at the hands of her Caucasian co-workers.

95. Jones told Curry that she believed that she was being mistreated because of her race and that she believed that certain employees were making racial remarks and jokes about her in Russian ("Second Race Discrimination Complaint")

96. Curry responded to Jones' Second Race Discrimination Complaint by telling her that her belief that she was being mistreated because her race was "bullshit" and "all in your head."

97. Curry failed to interview Jones regarding her Second Race Discrimination Complaint.

98. Curry failed to interview any of Jones' coworkers regarding Jones' Second Race Discrimination Complaint.

99. Curry failed to interview any witnesses regarding Jones' Second Race Discrimination Complaint.

100. Jones did not obtain a written statement from Jones concerning her Second Race Discrimination Complaint.

101. Jones did not obtain a written statement from any of Jones' coworkers concerning Jones' Second Race Discrimination Complaint.

102. Jones did not obtain a written statement from any witnesses concerning Jones' Second Race Discrimination Complaint.

103. Defendants did not discipline any of Jones' coworkers in connection with Jones' Second Race Discrimination Complaint.

104. At all times referenced herein, Jones was aware of situation in which Defendants had refused to pay certain Health Care Aides for all hours worked.

105. For example, in or around late May, 2020, Defendants terminated a Health Care Aide and refused to provide her with her last paycheck ("Terminated Employee").

106. The Terminated Employee was not initially informed of her termination; instead, Curry told Jones to stop scheduling the Terminated Employee to work.

107. Subsequently, the Terminated Employee began calling the Beachwood Office demanding her final paycheck.

108. Curry told Jones to respond to the Terminated Employee by telling her that Curry was not there and to otherwise "blow off" the Terminated Employee.

109. In the following days, the Terminated Employee continued to call the Beachwood Office.

110. Curry refused to take the Terminated Employee's calls.

111. The Terminated Employee became angrier with each call she made to the Beachwood Office.

112. After several days of the Terminated Employee calling the Beachwood Office and demanding her pay, Curry finally took her call and notified her that she had been terminated.

113. On or about May 28, 2020, Curry terminated Jones.

114. As justification for terminating Jones, Curry claimed that she had instructed Jones to terminate the Terminated Employee.

115. Curry's claim that she had instructed Jones to terminate the Terminated Employee.

116. At most, Curry told Jones to take the Terminated Employee off the schedule, which Jones did.

117. Defendants' purported rationale for terminating Jones was a pretext for retaliation against Jones because Jones had complained about not being paid the correct overtime rate.

118. Defendants' purported rationale for terminating Jones was a pretext for retaliation against Jones because Jones had made the First Race Discrimination Complaint and the Second Race Discrimination Complaint.

11

119. Subsequent to being terminated, but before she left the Beachwood Office, Jones requested that she be permitted to review her personnel file.

120. Jones wanted to make a copy of personnel file out of concerns that Curry would fabricate documents, as Jones had observed Curry do to other employees.

121. Jones wanted to make a copy of her time and pay records to ensure she was fully paid for all hours worked, unlike the Terminated Employee.

122. Another HCB employee provided Jones with her personnel file.

123. Jones left the Beachwood Office with her personnel file and made copies of its contents.

124. Subsequently, Jones returned her personnel file to HCB.

125. As a result of Defendants' conduction, Jones has suffered and continues to suffer damages.

## COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA
## (29 U.S.C. § 207).
## (Asserted Against All Defendants).

126. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

127. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

128. Jones was not exempt from the right to receive overtime pay under the FLSA during her employment with Defendants.

129. Jones is entitled to be paid overtime compensation for all overtime hours she worked for Defendants.

130. At all times relevant to this Complaint, Defendants regularly miscalculated the overtime rate that should have been paid to Jones, resulting in the regular underpayment of overtime.

131. As a result of Defendants' failure to properly compensate Jones at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week, Defendants

violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

132. At all times relevant to this action, Defendants willfully failed and refused to pay Jones overtime wages required by the FLSA, causing Jones to suffer damage in amounts to be proven at trial.

133. Defendants either recklessly failed to investigate whether their failure to pay Jones the proper overtime wage for the hours she worked in excess of 40 per week during the relevant time period violated the Federal Wage Laws of the United States, they intentionally misled Jones to believe that Defendants were paying her overtime properly, and/or Defendants concocted a scheme pursuant to which they deprived Jones the overtime pay she earned.

134. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

135. Defendants violated the FLSA without a good faith belief that their conduct was lawful.

136. Jones is entitled to damages in the amount of her unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including her attorneys' fees and costs.

**COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME. (Asserted Against All Defendants).**

137. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

138. At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the OMFWSA.

139. At all relevant times, Defendants have employed and continue to employ, "employees," within the meaning the OMFWSA.

140. Jones was an employee of Defendants as that term is defined by the OMFWSA.

141. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

142. Defendants failed to pay Jones overtime based on her regular rate of pay for hours she worked in excess of 40 per week.

143. In denying Jones overtime compensation, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

144. As a direct and proximate result of Defendant's unlawful conduct, Jones has suffered and will continue to suffer a loss of income and other damages.

145. Having violated the OMFWSA, Defendants are joint and severally liable to Jones pursuant to O.R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and reasonable attorneys' fees. Additionally, Defendants are joint and severally liable to Jones for an amount equal to twice her unpaid wages. O.R.C. § 4111.14(J).

### COUNT III: FAILURE TO MAKE SEMIMONTHLY WAGE PAYMENTS IN VIOLATION OF R.C. §4113.15.
### (Asserted Against Defendant HCB Only).

146. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

147. Pursuant to R.C. §4113;15(A), "Every individual, firm, partnership, association, or corporation doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

148. HCB refused to pay Jones wages she earned during her final two weeks of employment.

149. HCB conduct violated R.C. §4113.15.

150. As a direct and proximate result of HCB's conduct, pursuant to R.C. §4113.15(B), HCB is liable to Jones for her unpaid wages, and an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed, or two hundred dollars, whichever is greater.

### COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF 29 U.S.C. § 215(A)(3).

151. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Pursuant to 29 U.S.C. § 215, no employer shall discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that the employee has not been paid wages in accordance with the overtime compensation provisions of 29 U.S.C. § 201 et seq.

153. Defendants violated 29 U.S.C. § 215(a)(3) of the FLSA and showed reckless disregard of the provisions of the FLSA concerning retaliation by terminating Jones because she made complaints about not being paid overtime correctly.

154. By reason of the foregoing acts of Defendants, Jones has suffered damages

### COUNT V: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION.

155. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

157. Defendants' termination of Jones constitutes a retaliatory adverse action against Jones in violation of Article II, Section 34a of the Ohio Constitution.

158. As a direct and proximate cause of Defendants' retaliatory conduct, Jones suffered and will continue to suffer damages.

### COUNT VI: RETALIATORY WRONGFUL TERMINATION IN VIOLATION OF OHIO REVISED CODE § 4112.02(I)

159. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

160. At all times referenced herein, Jones reasonably believed that she was being mistreated and harassed by her co-workers on the basis of her race, African American.

161. Jones complained to Defendants about racial discrimination and/or harassment during her employment with Defendants.

162. Pursuant to Ohio Revised Code § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section. …"

163. As a result of Jones' complaints about racial discrimination and/or harassment, Defendants terminated Jones' employment.

164. Defendants acted with actual malice when they retaliated against Jones.

165. Defendants' conduct was in violation of R.C. § 4112.02(I).

166. As a direct and proximate cause of Defendants wrongful conduct, Jones has suffered and will continue to suffer damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff September Jones requests judgment against all Defendants and for an Order:

   a. Awarding Plaintiff unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

   b. Awarding damages, including actual, general, special, incidental, non-economic, statutory, punitive, treble, liquidated, and consequential to Plaintiff in an amount to be determined at trial;

c. Awarding Plaintiff compensatory and monetary damages against Defendants to compensate Plaintiff for lost wages, unpaid wages, other consequential damages, and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

d. Awarding Plaintiff damages for the emotional caused by Defendants' unlawful conduct as described in Counts IV, V, and VI;

e. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq.;

f. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

g. Awarding pre-judgment and post-judgment interest as provided by law;

h. Awarding reasonable attorneys' fees and costs; and

i. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorneys for Plaintiff September Jones*

## JURY DEMAND

Plaintiff September Jones demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)